THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY QUINN, Defendant-Appellant.

(No. 59364;

First District (5th Division)—May 17, 1974.

James J. Doherty, Public Defender, of Chicago (Steven Silets and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Barry Rand Elden, and Zachary L. Stanger, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was found guilty of the theft of a fan having the value of less than $150 and sentenced to 60 days in the House of Correction.

On appeal, he contends (1) the complaint was void, because the Chicago Public Library, alleged to be the owner of the fan, was not an entity legally capable of owning property; and (2) he was not proved guilty beyond a reasonable doubt.

Carl Willis, the only witness for the State, testified that he was a security agent for the Chatham branch of the Chicago Public Library. He had seen defendant and his accomplice in the library earlier that evening. Later, he saw defendant outside the library, carrying a fan which he recognized as belonging to the library. He pursued defendant and an accomplice into the alley behind the library, where he found the fan on the ground. Defendant had disappeared and, after Willis returned the fan to the library, he went back to the alley, where he saw and arrested defendant as he was entering a cab. Willis estimated that 3-5 minutes elapsed between the time he first observed defendant carrying the fan and the time of the arrest. The theft occurred at about 8:15 P.M., while it was still daylight.

Defendant testified that for the prior 5½ years he had worked part-time in a store next door to the library. On the day of the theft, he went into the alley behind the library, intending to borrow his employer's car and,

when he found it was not there, he decided to take a cab to his employer's house to get the car. He denied being in the library on that day and denied carrying the fan. He further stated that he did not see a fan in the alley and that he was not with anyone else that evening.

A police report, made out after the arrest from information provided by Willis to the reporting officer, did not mention an accomplice.

OPINION

## I.

Defendant first contends the complaint was void because the Chicago Public Library was not an entity capable of owning property. He argues that because the library is a mere department of the City of Chicago, without its own property or funds, the City of Chicago should have been alleged as the owner of the fan.

It is true that in a prosecution for theft, the State must allege and prove that the theft was from an entity owning property (*People v. Hill*, 68 Ill. App.2d 369, 216 N.E.2d 212), and defendant refers us to *Board of Directors of the Chicago Public Library v. Arnold*, 60 Ill.App. 328, in support of his contention that the Chicago Public Library could not own property.

In *Arnold*, the Board of Directors of the Chicago Public Library entered into a contract to pay for work by warrants drawn upon the Treasurer of the City of Chicago. A contractor sued the Board of Directors for a claimed unpaid balance. At that time, section 5 of chapter 81 (Hurd's Rev. Stat. 1895, ch. 81, par. 5) gave to the Board of Directors "[E]xclusive control of the expenditure of all moneys collected to the credit of the library fund, * * * *Provided*, that all moneys received for such library shall be deposited in the treasury of said city to the credit of the library fund, and shall be kept separate and apart from other moneys of such city, and drawn upon by the proper officers of said city, upon the properly authenticated vouchers of the library board." In holding that the Board of Directors could not be sued, the court stated at pages 330 and 331:

> "Now the board has no property or funds; it is only a department of the city—by construction a *quasi* corporation—having, among its powers, the power to draw vouchers upon a special fund in the city treasury. As it never can have anything with which to pay a judgment, assumpsit will not lie against it."

We do not believe *Arnold* is controlling here. The existing statute (Ill. Rev. Stat. 1973, ch. 81, par. 4—7(2)) gives the Board exclusive control over expenditures of moneys collected for the library and deposited to the credit of the library fund, but contrary to the statute in existence at the time of the contract in *Arnold*, the present statute has no limitation that the moneys received should be deposited into or drawn upon a special fund of the City.

In addition, we note that the Chicago Municipal Code 1973, chapter 23, paragraph 23—5, and the Public Library District Act (Ill. Rev. Stat. 1973, ch. 81, par. 1001—9) use the phrases "belonging to the Chicago Public Library, or any of its branches" and "belonging to the library" respectively, in setting forth violations and penalties for injury to the property of the library. In *People v. Crouch,* 77 Ill.App.2d 290, 293, 222 N.E.2d 46, the court, in discussing the sufficiency of a complaint, stated: "The term 'belonging to the complainant' is sufficient allegation of ownership. 'Belonging to' connotes title to or ownership."

■■ In view of the foregoing, we are of the opinion that the Chicago Public Library is an entity legally capable of owning property, and that the complaint here, alleging its ownership of the fan, was sufficient.

## II.

Defendant next contends that the identification testimony of the State's only witness, Carl Willis, failed to establish his guilt beyond a reasonable doubt. Willis testified that he had observed defendant and an accomplice in the library before the theft occurred. Later, he observed defendant outside the library, carrying a fan belonging to the library. He pursued defendant and an accomplice into the alley, where he found the fan and returned it to the library and then, upon his return to the alley, saw and arrested defendant as he was entering a cab. Defendant argues that Willis saw the person taking the fan for such a short time, only a few moments, that he did not have sufficient opportunity to view that person. He claims that Willis could easily have mistaken him for the thief, and defendant points out that it was improbable, if he had been the thief, that he would have remained in the area for 3-5 minutes after having been chased by the security guard, particularly when defendant had a library card and had worked next door to the library for 5½ years. He further argues that he had a logical reason for being in the area behind the library, as he worked next door and was there looking for his employer's car.

■■ It is well-settled that the identification testimony of a single witness, if positive and credible, is sufficient to sustain a conviction. (*People v. Carr,* 16 Ill.App.3d 76, 305 N.E.2d 554.) Here, Willis was positive in his identification of the defendant. We note that he had observed defendant and another person in the library prior to seeing defendant carrying the fan in the driveway behind the library. In addition, Willis testified it was still daylight when he observed defendant carrying the library fan, and within a short time, approximately 3-5 minutes after his initial observation, he arrested defendant. Willis and defendant were the only persons testifying, and their testimony was in direct conflict. Thus, the problem is

one of the credibility and weight to be given each, which is a matter for the trial court's determination (*People v. Carr, supra, People v. Novotny,* 41 Ill.2d 401, 244 N.E.2d 182), which will not be disturbed unless the evidence is so unsatisfactory as to leave a reasonable doubt as to guilt. *People v. Norfleet,* 15 Ill.App.3d 567, 304 N.E.2d 672.

■■ Here, after carefully examining the record, we cannot say that the evidence was so unsatisfactory as to leave a reasonable doubt as to defendant's guilt.

For the reasons stated, the judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.